**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ABIGAIL MILLER, ASHLEY CINCINATUS, STEPHANIE SMITH, KELLEY STALEY and JESSICA WRIGHT, | ) ) ) ) ) | |
| PLAINTIFFS, | ) ) | Civil Action No.: |
| V. | ) ) | _____ |
| E. AMANDA DELLINGER, LLC d/b/a THRIVE COUNSELING, E. AMANDA DELLINGER-ALLEN, and GREG ALLEN, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| DEFENDANTS. | ) | |

## <u>COMPLAINT</u>

Plaintiffs Abigail Miller, Ashley Cincinatus, Stephanie Smith, Kelley Staley, and Jessica Wright (collectively "Plaintiffs"), by and through the undersigned attorneys, bring this action against Defendants E. Amanda Dellinger, LLC d/b/a Thrive Counseling ("Thrive Counseling"), E. Amanda Dellinger-Allen, and Greg Allen (collectively "Defendants") for failure to pay Plaintiffs minimum wage as required by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") and at a rate of one-and-one-half their regular rate of pay for all hours worked in excess of 40 hours per week. Additionally, Plaintiffs assert a claim of retaliation

under the FLSA.  Plaintiffs also assert a state law claim of quantum meruit pursuant to O.C.G.A. § 9-2-7.  Plaintiffs show the Court as follows:

## PARTIES

1.      At all relevant times, Plaintiffs were residents of the state of Georgia and submit themselves to the jurisdiction of the Court.

2.      Defendant Thrive Counseling is a for-profit Georgia corporation with its principal place of business located at 6095 Pine Mountain Road, Suite 105, Kennesaw, GA 30152.

3.      Defendant Thrive Counseling may be served with process through its Registered Agent, Kena R. Butler, 108 Old Mill Road, Cartersville, GA 30120.

4.      At all relevant times, Defendant Thrive Counseling has been, and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201 *et seq.*

5.      At all relevant times, Defendant Thrive Counseling has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A) because it "has employees engaged in commerce or in the production of goods for commerce, or

that has employees handling, selling, or otherwise working on goods or materials that have ben moved in or produced for commerce by any person."

6.     On information and belief, at all relevant times, Defendant Thrive Counseling has had an annual gross volume of sales or business done in excess of $500,000.

7.     At all relevant times, Defendant Thrive Counseling has had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

8.     At all relevant times, Defendant Thrive Counseling was an "employer" of Plaintiffs as that term is defined by 29 U.S.C. § 203(d).

9.     Defendant Thrive Counseling is governed by and subject to 29 U.S.C. § 206 and 29 U.S.C. § 207.

10.    Defendant Amanda Dellinger-Allen owns and operates Thrive Counseling.  Defendant Amanda Dellinger-Allen acts directly or indirectly on behalf of Thrive Counseling and exercises day-to-day control over the operations and pay practices of Thrive Counseling.  Defendant Amanda Dellinger-Allen is an employer within the meaning of the FLSA.

11.    Defendant Greg Allen owns and operates Thrive Counseling. Defendant Greg Allen acts directly or indirectly on behalf of Thrive Counseling and

exercises day-to-day control over the operations and pay practices of Thrive Counseling.  Defendant Greg Allen is an employer within the meaning of the FLSA.

## JURISDICTION AND VENUE

12.    This Court has federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

13.    Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B)(3), venue is proper because the unlawful employment practices giving rise to the Plaintiffs' claims occurred in this judicial district and division.

## FACTUAL ALLEGATIONS

14.    At all relevant times, Plaintiffs were employed by Defendant Thrive Counseling.

15.    Plaintiffs Abigail Miller, Ashley Cincinatus, Stephanie Smith, Kelley Staley are Associate Level Counselors.  Plaintiff Jessica Wright is a Master's Level Counselor.

16.    Most recently, Plaintiffs reported directly to Greg Allen, Director of Business Operations and had a dotted reporting line to Amanda Dellinger-Allen, Clinical Director.

17.    Greg Allen and Amanda Dellinger-Allen are married.

18.     As Associate Professional Counselors, Plaintiffs Abigail Miller, Ashley Cincinatus, Stephanie Smith, and Kelley Staley are provisionally licensed professional counselors who have completed master's level counseling programs, passed necessary national examinations, and are working toward full licensure by completing a designated amount of supervised clinical counseling hours.

19.     As a Master's Level Counselor, Plaintiff Jessica Wright has a master's degree in counseling and is currently working towards becoming an Associate Professional Counselor.

20.     Plaintiffs are under the direction and supervision of a full licensed counselor outside of Thrive Counseling.

21.     Plaintiffs are listed as "Therapists" on Thrive Counseling's website (the "about us" tab).  In fact, each Plaintiff had a picture and an extensive description on Thrive Counseling's website (http://www.thrivecounselingcenter.com/about.html).

22.     At Thrive Counseling, Counselors are responsible for providing counseling, play therapy, art therapy, group therapy, family therapy, couples therapy, parent coaching/consultation, and other psychotherapy services to clients of Thrive Counseling.

23.     As part of their job duties, Counselors are required to complete a substantial amount of paperwork as well.  For example, Counselors are responsible

for completing the intake assessments of potential clients, a "Medical Record Progress Note" every time the Counselor provides services to a client (or a "Play Therapy Session Summary" for younger clients in play therapy), a more detailed "Psychotherapy Notes," and additional documentation when a client chooses to discontinue services with Thrive Counseling including a "Case Closure and Summary of Treatment" form and an "Overview of Clinical Care Summary" outlining the course of treatment up until closure or transfer.

24.     Thrive Counseling requires that all notes be handwritten instead of charted electronically as Thrive Counseling maintains paper files.

25.     Defendants misclassified Plaintiffs as independent contractors rather than employees and did not pay them the federal minimum wage and/or one-and-one-half their regular rate for all hours worked in excess of 40 hours per week.

26.     Defendants directly and indirectly controlled the employment relationship.

27.     Plaintiffs were asked to sign an "Independent Contractor Agreement" at the time of their hire.

28.     The Independent Contractor Agreement required Plaintiffs to remain an active member of at least one professional affiliation/organization that related to his

or her license and specialty area at all times, and to maintain such membership dues at their own expense.

29.    The Independent Contractor Agreement also required Plaintiffs to go through an unpaid mandatory orientation period that lasted one week.

30.    The Independent Contractor Agreement also required Plaintiffs to provide availability during which the Plaintiffs could see clients.  Plaintiffs did not have full discretion to set their availability as the Agreement required that they be available "no less than four (4) nights until close per week."

31.    The availability of the Plaintiffs ranged from 30 to 47 hours per week.

32.    Often, Plaintiffs had back-to-back counseling sessions and were not able to complete the required paperwork until their counseling sessions ended—after their hours of "availability."

33.    It was not uncommon for the Plaintiffs to stay well past when the Center closed at 8PM.

34.    The Independent Contractor Agreement also required Plaintiffs to attend and participate in mandatory monthly staff meetings and in-house associate trainings.  In addition, the Independent Contractor Agreement provided that the Plaintiffs would "schedule and attend a Case Recap Meeting with the Director at the

conclusion of each month to keep Director current with Thrive client matters related to Services."

35.    The Independent Contractor Agreement also required Plaintiffs to market their services "as well as the services of Thrive Counseling as a whole in the community on a regular, ongoing basis both as an individual and through group efforts."  During the term of the Independent Contractor Agreement, the Plaintiffs were required to: participate in "weekly self-promotion efforts"; participate in "at least four (4) approved community events per year on behalf of Thrive, such as speaking engagements or organizing and running of trade show exhibits/booth"; design and run at least one (1) group therapy offering per contract term; contribute a designated article to Thrive Counseling's monthly eNewsletter; cover Thrive Counseling's free telecalls, called "Parent Talk"; and provide Thrive Counseling with at least one (1) video clip or helpful resource to make available to share with parents/clients each month.

36.    Notably, the "Parent Talk" (which is where parents can ask questions of Counselors) was set at a time in the sole discretion of Defendants, even if outside of Plaintiffs' set availability.

37.    Defendants also decided, in their sole discretion, whether to post the videos prepared by Plaintiffs to their Facebook or YouTube websites.

38.     The group therapy offerings had to be reviewed, and approved, by Defendants.  In fact, Plaintiffs were required to submit all materials for the group therapy offerings to Defendants, Defendants then heavily revised the materials, and then the Plaintiffs had to make those revisions prior to running any group therapy offerings to ensure that the group therapy was in line with Thrive Counseling branding.

39.     The Independent Contractor Agreement also required that the Plaintiffs clean the office through required cleaning rotations.

40.     The Plaintiffs were required to sign Independent Contractor Agreements that ranged in length from one year to three years.

41.     The longer the contract term, the higher percentage split Plaintiffs would receive.  For example, a Counselor that signed a one-year term would get 50% of all fees charged to the client, a two-year term would entitle the Counselor to 55%, and a three-year term would entitle the Counselor to 60%.

42.     According to the Independent Contractor Agreement, "Thrive Counseling shall have ultimate authority to determine the fees charged to all clients of Thrive Counseling."

43.     The Independent Contractor Agreement also had several restrictive covenants.

44.     For example, the Independent Contractor Agreement provided that the Plaintiffs were not to provide therapy counseling sessions in a private practice setting during the term of the agreement.

45.     Additionally, during the term of the agreement and for a period of two (2) years thereafter, the Independent Contractor Agreement provided that Plaintiffs were not to perform competing professional services at any location within a fifteen (15) mile radius of Thrive Counseling.

46.     The Independent Contractor Agreement also provided very hefty fines and penalties if a counselor broke the Independent Contractor Agreement prior to the end of the term.

47.     Thrive Counseling assigned clients to Plaintiff unilaterally.

48.     Defendants maintained a document titled "Ethics Policy and Best Practices Manual."  That document was not allowed to leave Thrive Counseling's premises.

49.     Defendants threatened to charge Plaintiffs $500 if they lost the "Ethics Policy and Best Practices Manual."

50.     That document provided a significant number of rules and policies that Plaintiffs were required to follow.

51.     For example, Plaintiffs were required to answer emails within 24 hours of receiving an email.  In addition, Plaintiffs were required to check their work emails and voicemails at least once a weekend.

52.     Plaintiffs were also required to complete paperwork the same day as the counseling session no matter how busy or how many counseling sessions they had that day.

53.     On one occasion, on or about January 11, 2022, Plaintiff Abigail Miller had scheduled availability from 2-8PM.  She arrived at Thrive Counseling prior to her availability at 1:15PM and did not leave until after 9:30PM.  Given her schedule and how busy she was, Plaintiff Abigail Miller was not able to complete the required paperwork following a counseling session per Thrive Counseling's policy which required that paperwork be completed the same day as the counseling session.

54.     At 9:05PM, Greg Allen sent Plaintiff Abigail Miller an email stating, "IT MUST BE SENT TONIGHT . . . you are purposely being insubordinate and not following my direction."

55.     Greg Allen later told Plaintiff Abigail Miller in a meeting, "I am your director, if I give you an order you are to say yes sir and do it."

56.     Defendants also required the Plaintiffs to perform "outreaches" to every client that had not yet scheduled a follow-up counseling session.  Defendants had a

prescribed way in which these outreaches were to be performed.  For example, the first outreach to a client had to be a phone call, the second one could be a phone call or email, the third one had to be an email, and the fourth outreach was a letter that was mailed.

57.    Every Monday, Defendants would send out a "Happy Monday Email" which was extremely detailed.  Plaintiffs were required to read these emails as they contained deadlines and "things to know."

58.    Plaintiffs were also required to respond to a weekly "Direct Discussion" email in which Amanda Dellinger-Allen would submit a topic for the Plaintiffs to brainstorm and submit their responses (it would typically be a question or example scenario/clinical vignette).  Amanda Dellinger-Allen would then compile everyone's responses and the Plaintiffs were required to read the compiled responses.

59.    Plaintiffs were also required to attend mandatory trainings outside of their hours of availability that they had provided Defendants.

60.    Plaintiffs received pay only for the counseling sessions—they did not receive pay or compensation in any form for anything else, including but not limited to, required marketing events, required trainings, outreaches, reading and responding to Defendants' emails, checking emails and voicemails on the weekends, cleaning, research, preparing paperwork, etc.

61.     Defendants could also put a counselor on a "hold" unilaterally as a punitive measure which meant that the counselor was no longer being given new clients and would only be allowed to provide therapy to direct referrals or to clients they had already counseled.

62.     Around this same time period, the Plaintiffs made it known to leadership that they would not be performing the extra tasks required for which they were not getting paid.

63.     For example, on or about January 13, 2022, Plaintiff Abigail Miller sent Katherine Grabowski, Assistant Director & Managing Therapist, an email regarding yet another mandatory meeting that said, "Last year it was optional.  It is not really a training.  It's not in my time of availability.  I don't get paid.  I'm so tired of everything added on Kat."

64.     In February 2022, Defendants developed an "opt-in program" which ran from on or about February 7, 2022 to June 1, 2022.

65.     As part of that program, Plaintiffs had to either "opt-in" and accept as many new clients as Thrive Counseling assigned to them or be placed on a "hold" during which Thrive Counseling would not assign the Plaintiffs any new clients aside from direct referrals.

66.     The result of this program was that the counselors that opted-in worked an inordinate amount of hours as they all had extremely heavy caseloads and those that opted-out saw a dramatic decrease in their caseload, and therefore pay.

67.     The program was punitive in nature for the Plaintiffs' complaints that they would not be performing the extra tasks required for which they were not getting paid.

68.     Plaintiff Abigail Miller was not given the option to participate in this program unless she apologized to Greg Allen, agreed to take on more clients than she felt she could ethically handle, and also agreed that she would take any client regardless of the presenting problem and her clinical judgment as to whether she could and should take on the client.

69.     On February 7, 2022, Greg Allen sent Plaintiff Abigail Miller an email that said, "Your hold branches from a different set of circumstances but falls within a similar realm.  Where you have not refused client assignments like some others, you did choose not to follow my direction when it came to the need to email out new client paperwork within the time frame that Thrive has set as a policy."

70.     Greg Allen sent Plaintiff Abigail Miller an email on February 9, 2022, that said, "your hold is in place because of the failure to follow direction."

71.     On or about April 15, 2022, Greg Allen planned a team-building outing for the counselors of lunch and axe throwing.  When not all counselors attended the team building activity, Amanda Dellinger-Allen expressed her disappointment that the counselors did not attend.

72.     On or about June 8, 2022, Greg Allen sent all counselors an email stating that Thrive Counseling was going to do an "overhaul" of its business model due to a lack of appreciation from the counselors for all that Thrive Counseling did for them.

73.     In other words, Greg Allen made it very clear that these changes were punitive in nature based on Plaintiffs' complaints to leadership that they would not be performing the extra tasks required for which they were not getting paid.

74.     As part of the overhaul of the business model, Plaintiffs would no longer have access to TherapyNotes software and would have to drive to the Center at the start of their availability in order to pick up a printed copy of their schedule for the day.  Because Plaintiffs no longer knew their schedule ahead of time, they could not schedule any personal appointments during their hours of availability.  In fact, given that many of the Plaintiffs work far from the center, and the price of gas, some of the Plaintiffs were forced to remain at the center during their entire window of availability.

75.     Additionally, Plaintiffs were forced to sign up for a cleaning task every day or be fined; they were no longer allowed to use the lounge or library for work and were forced to work in the kitchen, locker room, etc.; they were no longer allowed to use time off they had already earned through the Bee Wellness and HIVE programs (programs that earned the counselors time off); they no longer had holidays off; etc.

76.     Greg Allen told Plaintiffs, in email correspondence, that the reason for the "overhaul" of the business model was because of "views currently voiced in the most recent staff meetings" and because "[t]here appears to be an overall attitude amongst the group of providing the minimum of what is laid out in the contract."

77.     On or about June 22, 2022, Greg Allen and Amanda Dellinger-Allen notified all staff of Thrive Counseling that they were shutting down the practice effective August 1, 2022.  In the closure letter, Greg Allen and Amanda Dellinger-Allen stated that the reason for the closure was in part because "Leadership has faced more and more challenges from contractors than it ever has.  Responsibilities clearly defined in the contract are either ignored or outright refused.  Policies that are put in place for safety are completely broken, disrespectful interactions are commonplace, and complete/thorough client charts are treated as optional.  This attitude and behavior has essentially held the owner's hostage as any decision that is made cannot

16

be enacted without direct opposition from at least one person, but in most cases, multiple."

78.     There were weeks that Plaintiffs worked in excess of 40 hours per workweek and weeks in which Plaintiffs received no compensation or compensation well below the federal minimum wage (i.e. orientation).

79.     Plaintiffs were required to perform work outside of their availability including, but not limited to, required marketing events, required trainings, outreaches, reading and responding to Defendants' emails, checking emails and voicemails on the weekends, cleaning, research, preparing paperwork, etc.

80.     Defendants required, encouraged, and knowingly permitted Plaintiffs to work below the federal minimum wage and to work overtime hours, and failed to pay Plaintiffs the required minimum wage and overtime premium pay at the legally required rate when they worked overtime hours.

81.     Defendants were, or should have been, aware that the FLSA requires them to pay non-exempt employees the minimum wage and overtime wages at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per workweek.

82.     On information and belief, Defendants' unlawful conduct described herein is pursuant to a policy or practice of minimizing labor costs violating the FLSA.

83.     Defendants' failure to pay Plaintiffs wages at the rate required by the FLSA was willful and was not in good faith.

84.     As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of minimum wages and overtime wages in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, interest, attorneys' fees and costs, as well as other benefits under applicable law.

## COUNT I
## WILLFUL FAILURE TO PAY MINIMUM WAGE
## IN VIOLATION OF THE FLSA

85.     Plaintiffs incorporates by reference all preceding paragraphs of the Complaint.

86.     Plaintiffs assert this count pursuant to 29 U.S.C. § 216(b).

87.     At all relevant times, Defendant Thrive Counseling was an employer engaged in commerce and/or the production of goods for commerce pursuant to 29 U.S.C. §§ 203(b), 203(s)(1).

88.     At all relevant times, Defendants employed Plaintiffs, and Plaintiffs were Defendants' employees, pursuant to 29 U.S.C. §§ 203(e), 203(g).

89.     On information and belief, at all relevant times, Defendant Thrive Counseling has had an annual gross volume of sales or business done in excess of $500,000.

90.     The FLSA requires covered employers like Defendants to pay employees like Plaintiffs federal minimum wage for hours worked.  *See* 29 U.S.C. § 206(a).

91.     Plaintiffs do not fall under any of the exemptions to the minimum wage requirements of the FLSA.  *See* 29 U.S.C. § 213.

92.     At all relevant times, Defendants knew that Plaintiffs were not paid federal minimum wage for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to pay Plaintiffs the federal minimum wage.  *See* 29 U.S.C. § 255.

93.     Defendants were familiar with the requirements of the FLSA. Defendants' violations were willful because they knew or showed reckless disregard for the matter of whether their conduct was prohibited by the FLSA.

94.     Defendants' willful failure and refusal to pay Plaintiffs the federal minimum wage for hours worked violates the FLSA.  *See* 29 U.S.C. § 206.

95.     As a direct and proximate result of these unlawful practices, Plaintiffs suffered and continue to suffer wage loss and are therefore entitled to recover unpaid

minimum wages for up to three years prior to the filing of their claims, liquidated damages, pre-and post- judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT II
### WILLFUL FAILURE TO PAY OVERTIME WAGES
### IN VIOLATION OF THE FLSA

96.     Plaintiffs incorporate by reference all preceding paragraphs of the Complaint.

97.     Plaintiffs assert this count pursuant to 29 U.S.C. § 216(b).

98.     At all relevant times, Defendant Thrive Counseling was an employer engaged in commerce and/or the production of goods for commerce pursuant to 29 U.S.C. §§ 203(b), 203(s)(1).

99.     At all relevant times, Defendants employed Plaintiffs, and Plaintiffs were Defendants' employees, pursuant to 29 U.S.C. §§ 203(e), 203(g).

100.   On information and belief, at all relevant times, Defendant Thrive Counseling has had an annual gross volume of sales or business done in excess of $500,000.

101.   The FLSA requires covered employers like Defendants to pay employees like Plaintiffs at a rate of one-and-one-half their regular rate of pay for all hours worked in excess of 40 hours per week.  *See* 29 U.S.C. § 207.

102.   Plaintiffs' employment do not fall under any of the exemptions to the maximum hour requirements of the FLSA.  *See* 29 U.S.C. § 213.

103.   There were weeks that Plaintiffs worked more than 40 hours per week for Defendants.

104.   At all relevant times, Defendants did not properly compensate Plaintiffs for all hours worked in excess of 40 in a workweek, as required by the FLSA.

105.   At all relevant times, Defendants knew that Plaintiffs worked overtime without proper compensation, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to pay Plaintiffs at a rate of one-and-one-half their regular rate of pay for all hours worked in excess of 40 hours per week.  *See* 29 U.S.C. § 255.

106.   Defendants were familiar with the requirements of the FLSA. Defendants' violations were willful because they knew or showed reckless disregard for the matter of whether their conduct was prohibited by the FLSA.

107.   Defendants' willful failure and refusal to pay Plaintiffs overtime pay violates the FLSA.  *See* 29 U.S.C. § 207.

108.   As a direct and proximate result of these unlawful practices, Plaintiffs suffered and continue to suffer wage loss and are therefore entitled to recover overtime pay for up to three years prior to the filing of their claims, liquidated

damages, pre-and post- judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT III
## RETALIATION IN VIOLATION OF THE FLSA

109.   Plaintiffs incorporate by reference all preceding paragraphs of the Complaint.

110.   Plaintiffs assert this count pursuant to 29 U.S.C. § 215(a)(3).

111.   Plaintiffs raised complaints to leadership that they would not be performing the extra tasks required for which they were not getting paid.

112.   In retaliation for Plaintiff's protected activity, Defendants (1) created the "opt-in program"; (2) overhauled the business model and took away several benefits to which Plaintiffs previously were entitled to; and (3) made the decision to shut down the practice effective August 1, 2022.

113.   As a direct and proximate result of these unlawful practices Plaintiffs seek back pay and lost benefits, front pay, compensatory damages, liquidated damages, pre-and post- judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## COUNT IV
## QUANTUM MERUIT
## VIOLATION OF O.C.G.A. § 9-2-7

114.   Plaintiffs incorporate by reference all preceding paragraphs of the Complaint.

115.   The "Independent Contractor Agreement" signed by Plaintiffs is null and void as it violates the FLSA.

116.   Plaintiffs performed services of value in good faith.

117.   Defendants accepted the services and retained the benefit of the services.

118.   No compensation was paid to Plaintiffs for the services.

119.   Plaintiffs seek to recover for the work and labor they performed that was uncompensated for work performed under 40 hours per week as opposed to overtime work which is being sought in the FLSA claim.

**WHEREFORE,** Plaintiffs demand a TRIAL BY JURY and the following relief:

(a)   A declaratory judgment that the Defendants' practices complained of herein are unlawful under the FLSA;

(b)     An award of back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(c)     An award of compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(d)     An award of unpaid wages for minimum wage, unpaid wages at regular hourly rate, unpaid overtime compensation, and other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful acts;

(e)     An award of front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount

(f)     An award of liquidated and punitive damages;

(g)     An award of pre-and post- judgment interest;

(h)     An award of costs and expenses of this action, including reasonable attorney's and expert fees; and

(i)     Such other relief as this Court deems just and proper.

Respectfully submitted, this 29th day of July, 2022.

                              *s/ Jackie Lee*
                              Jackie Lee
                              Georgia Bar No. 419196
                              jackie@leelawga.com

24

LEE LAW FIRM, LLC
695 Pylant Street N.E., Suite 105
Atlanta, Georgia 30306
Telephone: (404) 301-8973

Aaron M. Kappler
Georgia Bar No. 272533
akappler@tokn.com
Thompson, O'Brien, Kappler & Nasuti,
P.C.
2 Sun Court, Suite 400
Peachtree Corners, GA 30092
Telephone: (770) 925-0111

**COUNSEL FOR PLAINTIFFS**